1  RONALD K. ALBERTS (SBN: 100017)
   SHANNON L. VICTOR (SBN: 221889)
2  GORDON & REES LLP
   633 West Fifth Street
3  Suite 4900
   Los Angeles, CA 90071
4  Telephone: (213) 576-5000
   Facsimile: (213) 680-4470
5  ralberts@gordonrees.com
   svictor@gordonrees.com
6
   Attorneys for Defendants
7  AETNA LIFE INSURANCE COMPANY;
   THE BOEING COMPANY EMPLOYEE
8  HEALTH AND WELFARE BENEFIT PLAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARI GARRISON,<br><br>   Plaintiff,<br><br>vs.<br><br>AETNA LIFE INSURANCE COMPANY; THE BOEING COMPANY EMPLOYEE HEALTH AND WELFARE BENEFIT PLAN<br><br>   Defendants. | CASE NO. CV 07-03094 JFW (Ex)<br><br>DEFENDANTS, AETNA LIFE INSURANCE COMPANY AND THE BOEING COMPANY EMPLOYEE HEALTH AND WELFARE BENEFIT PLAN'S OPENING TRIAL BRIEF |

Defendants, The Boeing Company Employee Health and Welfare Benefit Plan and Aetna Life Insurance Company hereby submit the following Trial Brief.

-1-

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................3
II. FACTUAL BACKGROUND ..................................................................................4
III. LEGAL ANALYSIS - STANDARD OF REVIEW ...............................................14
IV. AETNA'S TERMINATION OF BENEFITS WAS PROPER ...............................15
    A. Aetna Made Extensive Efforts to Evaluate Plaintiff's Claims ...........15
    B. Aetna Consistently Communicated with Plaintiff ..............................15
    C. Plaintiff's Physicians' Records Support Terminating Benefits ...........16
    D. The Video Surveillance Contradicts Plaintiff's Claims ......................16
    E. Plaintiff's Occupation was Sedentary..................................................17
V. CONCLUSION .......................................................................................................17

# TABLE OF AUTHORITIES

Employee Retirement Income Security Act ("ERISA") ...........................................3

## I. INTRODUCTION

Plaintiff Cari Garrison ("Plaintiff") brings claims against Defendants, Aetna Life Insurance Company ("Aetna") and The Boeing Company Employee Health and Welfare Benefit Plan (the "Plan") for long term disability ("LTD") benefits. Aetna is the underwriter and claims fiduciary of the Group Life and Long Term Disability Insurance Policy ("LTD Plan") provided by The Boeing Company ("Boeing"). The LTD Plan, in no uncertain terms, vests Aetna with discretionary authority to review denied claims and make benefit determinations.

Plaintiff was employed by Boeing and was covered under the terms of the Boeing Plan, including the LTD Plan. She ceased working on January 29, 2004, when she underwent a spinal fusion. Thereafter, she received short term disability ("STD") benefits, followed by long-term disability ("LTD") benefits, from July 10, 2004 through June 29, 2006. After thoroughly investigating Plaintiff's claims, Aetna properly terminated Plaintiff's benefits on July 5, 2006, finding that she was not disabled from her "own occupation." Plaintiff appealed on December 28, 2006. Aetna denied Plaintiff's appeal on February 9, 2007. As a result, Plaintiff filed the Complaint in this Action under the Employee Retirement Income Security Act ("ERISA").

Aetna's decision to terminate Plaintiff's LTD benefits was properly based upon the evidence in the record. Aetna reviewed all records provided by Plaintiff and obtained the services of two outside, board-certified physicians to review Plaintiff's claims. The medical records, including those of Plaintiff's own treating physicians' contain inconsistent findings. Aetna conducted video surveillance of Plaintiff that shows her voluntarily bending fully at the waist, turning her neck, walking upright, carrying objects, and moving fluidly in and out of her car without any pain behaviors or assisting devices. The range of motion Plaintiff demonstrates, without any pain behaviors, is inapposite to her claims of disabling

pain. The totality of the evidence strongly supports Aetna's decision to terminate benefits and should be afforded this Court's full deference on review.

## II. FACTUAL BACKGROUND

On January 29, 2004, Plaintiff underwent a lumbar fusion, performed by Steven C. Dennis, M.D. ("Dr. Dennis") (0050-0051[1]). Her STD benefits were approved effective February 5, 2004 (0052-0054). Dr. Dennis periodically filled out Attending Physician's Statements for Plaintiff from 2004 until 2007. He continuously characterized her as temporarily totally disabled, incapable of minimal sedentary activity. Yet his later reports indicated there was no medical contraindication for Plaintiff to participate in a vocational rehabilitation program (0046-0047, 0062-0063, 0067-0068, 0101-0103, 0198-0200, 0414-0540).

On February 13, 2004, Plaintiff's former supervisor filled out a Physical Demand Analysis indicating Plaintiff spent 80% of her day on the phone and/or computer. She was "continuously sitting" and "occasionally" standing and walking. She never lifted more than 20 pounds. Her usual shift was 12 hours without rotation. The range of accommodation hours available was 4 to 6. (0056)

In a letter dated June 17, 2004, Aetna advised that in order to receive LTD benefits, Plaintiff must complete a 26 week wait period, after which Aetna would decide if she met her plan's "definition of disability" for LTD benefits. (0083-0084). Aetna stated:

> Totally disabled means all of the following conditions apply to you:
>
> You are disabled as a result of an accidental injury or illness (including a pregnancy-related condition).
>
> As a result, you are earning 80 percent or less of indexed pre-disability earnings.

---

[1] The numbers refer to the corresponding pages of the Administrative Record which has been lodged with the Court. Attached hereto as Exhibit "A" is a copy of the documents contained in the Administrative Record that are specifically referenced in Defendants' Opening Trial Brief.

-4-

> During the first 30 months of disability, your accidental injury or illness prevents you from performing the material duties of your own occupation or other appropriate work Boeing makes available to you.
>
> After the initial 30 months of disability, your accidental injury or illness prevents you from performing the material duties of any reasonable occupation for which you may be suited by training, education and/or experience.

Aetna advised that the 30 months of disability noted above included the 26 week benefit waiting period and the first 24 months of LTD benefits payments. Aetna stated "own occupation means your occupation as it exists in the general economy and not your specific job at Boeing. In reviewing your eligibility for LTD benefits, the issue upon which we must focus is whether or not you have the ability to perform the material duties of your own occupation with reasonable continuity for any employer in the general economy."(0083-0084).

In a Work History and Education Questionnaire dated June 28, 2004, Plaintiff described her job duties as "Management of all FCS Supplier MGMT activities …Position requires long hours, significant travel in an extremely high stress environment." Plaintiff was "unable to travel or work extensive hours. Still experiencing significant pain in lower back and left leg. Daily fatigue & pain would prevent even an 8 hour day. Currently unable to remain in one position for more than 30 minutes. Frequently need to lay down." (0072-0073)

In a letter dated July 10, 2004, Aetna informed Plaintiff her LTD claim had been approved effective July 29, 2004. (0076-0079)

Screen prints dated September 14, 2004 indicate Plaintiff's employer advised that she "was functioning in a sedentary capacity prior to LOA [leave of absence]." Boeing's Superintendent, stated, "…accommodations are certainly available in any capacity as [she] is a department director. She was not doing any traveling prior to LOA, and would continue with no travel, no lifting, or any activity that would aggravate her condition…job tasks are her own office onsite with office support." (0727-0728)

David A. Gehret, M.D., Diplomate of the American Board of Neurology, ("Dr. Gehret") performed a neurological examination of Plaintiff and reported his findings on March 3, 2005. Under "Procedures" he listed, "EMG/NCV of the lower extremities." He indicated Plaintiff's prior left L5 radiculopathy had "pretty much improved from surgery." EMG/NCV studies indicated she "made an excellent recovery and is normal at this time." (0107-0109).

In a "Lumbar Spine Evaluation" by physical therapist Michael Mandas, P.T., ("Mr. Mandas "), dated March 10, 2005, he states Plaintiff reportedly experienced pain since her fusion on January 29, 2004, that interfered "with function and with work." (0111) He stated, "Lumbar x-rays were very good on her last visit to the surgeon" and under objective findings, "spinal curves are close to normal limits with flattened lumbar lordosis…Muscle strength was rated a 4/5 for both her lower extremities and her trunk strength. Her lumbar stabilization skills were "good."

On April 22, 2005, Dr. Dennis reported Plaintiff had been rear-ended by a "large SUV." A physical exam showed she was neurologically intact and a radiographic exam showed "no change from the films taken in February." (0117)

On March 31, 2005, Aetna sent Dr. Dennis a return to work ("RTW") Plan, advising that, "<u>any</u> accommodation or modified work schedule necessary to assist your patient ['s] successful return to work effort is available." (0115)

On January 27, 2006, acupuncturist, Lisa Angela Gibille, M.S., L.Ac, DIpl.AC., ("Ms. Gibille"), reported Plaintiff was "active around her home and with daily chores and errands." (0201-0202)

In Dr. Dennis' report dated March 10, 2006, he states Plaintiff's MRI of February 13, 2006 showed "degenerative disk disease at C4-5 and C5-6, nothing of major consequence." (0244)

In a report dated April 3, 2006, Ms. Gibille, stated Plaintiff "has resumed much of her normal routine, along with exercising as she had in the past." (0537-0538)

A Background Report from First Advantage Investigative Services ("First Advantage"), dated April 27, 2006, shows Plaintiff was the owner and president of an active corporation, Genevis, Inc., incorporated on April 5, 2004. (0271-0285)

On April 12, 2006, Elite Physicians Ltd. (NMR) (hereinafter "Elite") sent Plaintiff a letter advising that an IME had been scheduled with an Orthopedic specialist, Mitchell Cohen, MD ("Dr. Cohen") for May 3, 2006. Elite advised Plaintiff to bring "all films" with her to the appointment. (0257)

In letters dated April 17, 2006 and May 5, 2006, Aetna advised Plaintiff it needed current exam findings for her diagnosis of major depressive disorder. (0259-0260, 0302-0303)

Dr. Cohen performed an independent medical exam ("IME") of Plaintiff and issued his report on May 16, 2006, based upon his examination of Plaintiff and the medical records provided to him (which excluded any "films"). (0304-0315) He stated, "The patient's examination today is essentially normal. She has some mild muscle spasm of the cervical spine and lumbar spine, but her upper and lower extremities are neurovascularly intact. She has good range of motion of the cervical and lumbar spine and there is no evidence of any neurologic compression." He recommended permanent work restrictions of "no heavy lifting and no repetitive bending or stooping of the lumbar spine." Plaintiff reported the following "current stated daily activities":

> The patient states she rides recumbent bike about 30 minutes a day and does stretching and strengthening for her neck and back. This takes about an hour. She states the rest of the day she is doing household work including laundry. She does no vacuuming, no washing of the floors and no cleaning the bathrooms. She states she has a cleaning service that does these activities. She states she grocery shops and gives piano [lessons] a few times a week.

Dr. Cohen concluded, "...the patient should be able to perform a sedentary physical demand level for 8 hours a day and 40 hours a week. I can find no

-7-

medical reason that would prevent this patient from doing a sedentary type of job…She should be allowed to change position[s] at will to avoid prolonged sitting or standing to avoid exacerbating her low back symptoms."

On May 18, 2006, First Advantage reported Plaintiff had been observed under surveillance on May 9, 2006, performing the following activities:

> …bending fully at the waist while doing unknown tasks to various plants, twisting her neck while looking around, and talking to a cat. The claimant's movements were consistent throughout the surveillance period and could best be described as smooth and fluid. No braces, supports, orthopedic devices were observed. (0317-0325)

On May 22, 2006, First Advantage reported Plaintiff performed similar activities while under surveillance on May 15 and 16th. She was observed "bending fully at the waist while leaning into the vehicle, driving, and walking." (0326-0331)

A screen print dated June 23, 2006 indicates "travel" was determined to be part of Plaintiff's job description. Since travel "would be in the light physical demand category" and Plaintiff [was] "restricted to sedentary" work, a restriction of "no travel" would need to be added to her work restrictions. (0915)

Screens prints dated June 28 and 29, 2006, contain an occupational analysis. (0928-0929, 1293-1294) It indicates Plaintiff's occupation corresponds to the US Department of Labor's job title of "Manufacturing Engineer, Chief/Direct[or], Research and Development," which is classified as "sedentary" work "in the general economy." It states:

> Claimant's job has required in the past to travel occasionally according to the EE. However, the ER Supervisor has confirmed today that Claimant's job was performed as sedentary work activity prior to medical LOA and ER continues with willingness to provide any accommodations needed to allow successful RTW effort, which includes not travel requirement. From the information available to date, Claimant has skills and abilities to function in sedentary work

-8-

activity with L&R's as stated above in own OCC as it exists in the general economy. Claimant's ER is willing to provide any accommodation needed to RTW and further, Claimant's current L&Rs are within the job demands of own job and is welcomed back to work with this employer.

On June 28, 2006 Plaintiff's Supervisor at Boeing confirmed that, "any and all accommodations are available to allow [Plaintiff] to successfully RTW…ER would welcome [Plaintiff] back to work in any capacity." (1291)

Screen prints dated June 29, 2006 (0929-0930) state in part:

"The EE's own OCC was evaluated by VRC. EE has reported that her own occupation required traveling which would have made her job fall into the light category. Upon VRC review, it was determined that EE's own OCC as it exists in the general economy is performed as a sedentary occupation w/o the essential function of traveling. The VRC contacted EE's supervisor to determine if EE's job could be accommodated and be performed with no traveling. EE's supervisor has reported that prior to EE's disability claim, EE was performing own job in the sedentary capacity and had not been traveling. Supervisor reported that ER is willing to continue to provide accommodations to sedentary activity including no traveling. As VRC as reported that EE's own OCC in general economy is sedentary and ER is willing to accommodate EE's job to sedentary capacity, and EE has medically been found to be capable of performing sedentary work, I recommend termination of claim effective 06/29/06 based on EE not meeting definition of disability from performing own OCC and own job.

Screen prints dated June 29, 2006, (0931-0932) state:
"Concur with claim termination. Claimant's own job at Boeing was light level due to the Claimant's requirement to travel. Upon review for any OCC it was assessed that the general economy OCC classification for the nearest job match revealed OCC as sedentary. However, DA felt that due to high level OCC that travel (as required by own job) would seem a likely duty for other employers and if so, that would elevate OCC classification from sedentary to light. Medical review and IME have concluded full time sedentary capacity so it was important to clarify true OCC demand. This STS agreed w/DA's concern in this regard and it was decided to conduct a LMS outreach to alternate ER's to establish if travel is required or not for general economy OCC to ensure DOT class was accurate. While LMS was in process, further review of claim file revealed several contacts w/ER in the past who was willing to provide any accommodation to EE that would facilitate her RTW…as these accommodations were noted in the past, a current outreach was requested to determine if ER would still accommodate and specifically for no travel. If so, claimant's job duties would be sedentary (which corresponds with general economy classification in the DOT). ER confirmed with COV on 6-28-06 that yes, they would accommodate all L&Rs noted in medical review/IME L&Rs, and medical supports full time sedentary capacity, claim termination at this time is supported." (0931-0932)

-9-

In a letter dated July 5, 2006, Aetna terminated Plaintiff's LTD benefits. (0353-0356) Plaintiff's current diagnosis was reported as cervical DDD and Lumbar DDD. Aetna stated a Vocational and Rehabilitation Counselor ("VRC") determined Plaintiff's "occupation in the general economy would be classified as sedentary work demand." Aetna stated:

> We contacted your employer and it was determined that prior to your leave of absence your own job was being performed in a sedentary work demand. Previously your job demanded that you travel, but your employer had accommodated no traveling and is willing to continue to accommodate the restriction of no traveling. When determining if you continue to meet the definition of disability, we must determine if you are capable of performing your own occupation as it exists in the general economy, not in your specific job.

Aetna further advised:

> In order to assess your functionality, we obtained your medical records from Dr. Dennis and Los Alamitos Orthopaedic Physical Therapy which included office notes, physical therapy notes, and an MRI from February 5, 2006. The MRI results were typical degenerative protrusions of CR-C5, C5-6 discs, with mild canal stenosis, mild encroachment on the right neural foramen due to associated bony remodeling.

Aetna further advised that an IME was performed by Dr. Cohen on May 16, 2006, to clarify Plaintiff's "functionality." He concluded Plaintiff was "able to work in a sedentary physical demand level for an 8 hour day" with the restrictions and limitations to avoid exacerbating her symptoms. Based upon Plaintiff's medical records and the IME, Aetna concluded she was "capable of returning to work in a full time sedentary position with the above restrictions and limitations." Aetna advised, "The information submitted fails to support the conclusion that you have limitations and restrictions related to your diagnosis of Cervical DDD and/or Lumbar DDD that would preclude you from returning to your own occupation." Aetna stated, "While we do not deny that you may have medication, the medical information does not support that your conditions prevented you from performing your own occupation. The presence of a diagnosis or condition alone is not

-10-

sufficient to qualify for disability benefits." Aetna listed examples of additional information Plaintiff could submit on appeal. (0353-0356)

On July 24, 2006, Aetna provided Plaintiff with a copy of the documents upon which it based its decision to terminate her LTD benefits. (0364-0365) On November 20, 2006, Aetna sent Plaintiff's counsel documents, and a copy of the surveillance referral form, surveillance report, and 2 DVDs on December 13, 2006. (0375-0376, 0380)

On December 28, 2006, Plaintiff appealed, asserting Aetna's denial of her claim was "arbitrary and capricious." (0396-0412) As a result of her "unremitting pain, disabling side effects of her numerous medications and her depression secondary to her physical conditions, she [was] no longer able to perform these material and substantial duties of her occupation or any occupation [for] which she is reasonably fitted by training, education, or experience."

Plaintiff submitted her "autobiography" as an exhibit to her appeal. (0455-0460) She stated she was dealing with "chronic pain as the result of disk degeneration" which had "reached a plateau." In 2003 she was "working 7 days a week for months, generally 12-16 hour days, with frequent travel." She stated, "My managers on the project knew I was in a great deal of pain and would be as accommodating as possible. This meant having meetings in my office whenever possible, allowing me to change positions frequently, wearing an icepack or heating pad, and traveling for me whenever possible." Plaintiff's "bulk project" was coming to a close at the end of 2003. She stated there was "no permanent damage" to her "lumbar area" after her car accident in April of 2005. Her epigastric hernia surgery in May of 2005 had healed and was no longer a source of pain. Plaintiff stated her days "consist of stretching every morning, engaging in some form of exercise to strengthen my back, leg, neck, and shoulder, performing some light chores, resting and reading." (0396-0412)

In a letter dated January 3, 2007, Aetna acknowledged Plaintiff's appeal.

-11-

(0413) and provided examples of documents that could be submitted in support of Plaintiff's claim, such as, "…a detailed narrative report, outlining in objective terms the specific physical and/or mental limitations and restrictions inherent to her condition, which [Plaintiff's] doctor has placed on her as far as gainful activity is concerned; her physician's prognosis including current course of treatment, frequency of visits and specific medication prescribed," plus medical records for the period in which she claims total disability, such as test results, x-rays, lab data, and clinical findings. All information should be received by January 23, 2007."

In a report dated January 3, 2007, Dr. Dennis stated Plaintiff had a "solidly healed fusion at L3-4 and L4-5," "for a long period of time," but still had ongoing pain. He did not think Plaintiff would "return to her previous line of work" due to the stress required for her to "function in a competitive business environment." (0414-0415)

A "Peer Review Report" was issued by R. David Bauer, M.D, Board Certified Orthopedic Surgeon, with added Expertise in Spine Surgery, on January 26, 2007. (0420-0422) He reviewed Plaintiff's medical records including 2 CDs, an IME, and MRI reports. Dr. Bauer commented, "…surveillance indicate[s] that the claimant was observed bending fully at the waist and carrying objects. No pain behaviors were noted. She was able to bend forward and lean to a level below her waist to enter a Mercedes. She ambulates normally without pain behaviors. Her stride length is normal and her gait is normal. She is able to enter her car without any difficulty or halting motions." The MRI from February 15, 2006, shows "typical degenerative protrusions of C4-5, C5-6 with mild canal stenosis, mild encroachment on the right neural foramen due to associated bony remodeling." Plaintiff's physical therapy notes indicated cervical pain without lumbar complaints while others indicated lumbar complaints without cervical complaints.

Dr. Bauer stated:

-12-

"The attending physician does not provide any objective findings consistent with the claimant's self-reported complaints. The examination performed as a portion of the IME was within normal limits. The surveillance films do not indicate an individual with significant pain behaviors, nor do they indicate anyone with significant limitations of range of motion. The particular car that the individual drives is very low to the ground involving significant flexion of the spine to enter it and to sit in it. She does so without any pain behaviors. This is difficult for anyone with a symptomatic lumbar spine."

Aetna denied Plaintiff's appeal for LTD benefits in a letter dated February 9, 2007. (0434-0436) Plaintiff's benefits were certified through June 29, 2006 and terminated based on "medical evidence which showed that she could do sedentary work and her employer was accommodating [her] needs prior to leave of absence and agreed to continue to modify her occupation as needed." Aetna stated Plaintiff's entire file was reviewed Dr. Bauer. Aetna advised:

> Dr. Bauer stated all medical documentation was reviewed as well as letters from Ms. Garrison's friends and family. Dr. Bauer stated:
>
> Ms. Garrison's primary diagnoses were degenerative disc disease that was treated with a fusion from L3-L5. Ms. Garrison also had a history of L5 radiculitis, which healed and had a cervical degenerative disc disease, reported to be aggravated by a motor vehicle accident. The diagnostic testing that Ms. Garrison had does not show any significant functional limitations and the neurologist commented in his notes that Ms. Garrison had improved since her surgery. Ms. Garrison's attending physician does not provide any physical findings on examinations that were consistent with Ms. Garrison's complaints. The surveillance films do not demonstrate someone with pain behavior or that was limited in her range of motion. Based upon the physical examinations performed, surveillance films and diagnostic testing there was no evidence of a severe impairment that would restrict Ms. Garrison from performing sedentary activity for an eight hour day.

///

///

Plaintiff's medical documentation, "did not continue to support a functional impairment" beyond June 29, 2006. Aetna denied Plaintiff's appeal and advised that she had the right to bring an action under ERISA.

## III. LEGAL ANALYSIS - STANDARD OF REVIEW

Pursuant to the Ninth Circuit decision, *Abatie v. Alta Health & Life Ins. Co.* (2006) 458 F.3d 955, 962, a plan administrator's decision is *always* reviewed for an abuse of discretion when it has been conferred discretionary authority to make benefit determinations by plan terms. *Id.* at 967. However, the *Abatie* Court cautioned that when applying the abuse of discretion standard, the trial court's review should be "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Ibid.* Under *Abatie*, both "structural" and "actual" conflicts of interest, (or evidence thereof), will be considered by the trial court. The *Abatie* court suggests that evidence rising to an actual conflict of interest would include malice, self-dealing, parsimonious claims-granting history, a situation where the plan administrator offers inconsistent reasons for denial, fails to adequately investigate a claim or request information from the plaintiff, fails to give proper credit to a plaintiff's reliable evidence, or repeatedly denies benefits by misinterpreting the plan's language or incorrectly making decisions contrary to the weight of the record.

Plaintiff's LTD Plan vests Aetna with explicit discretionary authority to review LTD benefits.[2] Accordingly, Aetna's benefits decision must be reviewed for an abuse of discretion.

///

---

[2] The Boeing LTD Plan states in part: "Aetna is a fiduciary with complete authority to review all denied claims for benefits under this policy. In exercising such fiduciary responsibility, Aetna shall have discretionary authority to: Determine whether and to what extent employees and beneficiaries are entitled to benefits; and Construe any disputed or doubtful terms of this policy. Aetna shall be deemed to have properly exercised such authority unless Aetna abuses its discretion by acting arbitrarily and capriciously. (0021)

## IV. AETNA'S TERMINATION OF BENEFITS WAS PROPER

Aetna's determination that Plaintiff was not disabled from her own occupation is strongly supported by the record. Aetna's evaluation of Plaintiff's claims starkly contrasts the self-dealing behaviors discussed in *Abatie*.

### A. Aetna Made Extensive Efforts to Evaluate Plaintiff's Claims

Aetna made extensive efforts to evaluate Plaintiff's claims. Aetna repeatedly requested Plaintiff's medical records. (0259-0260 and 0302-0309) Aetna obtained the professional opinions of two board certified physicians to review Plaintiff's claims, Dr. Cohen and Dr. Bauer. (0420-0422 and 0304-0315) Aetna's in-house physicians and disability analysts repeatedly reviewed and evaluated Plaintiff's claims and records. (0843-0844, 0849-0851, 0902-0905, 0926) Aetna utilized obtained video surveillance of Plaintiff and consulted VRCs to investigate Plaintiff's occupation in the general economy. (0318-0325 and 0929-0930) Aetna more than adequately investigated Plaintiff's claims.

### B. Aetna Consistently Communicated with Plaintiff

Aetna consistently informed Plaintiff of the criteria she needed to meet in order to continue to receive benefits. Aetna's termination letter advised Plaintiff her MRI was essentially normal and explained that her occupation was sedentary. Aetna provided Plaintiff with copies of the documents and video surveillance it relied upon in reaching its decision, and suggested additional information she could submit on appeal. These communications are exemplified in Aetna's letters dated June 17, 2004, July 10, 2004, June 30, 2005, April 17, 2006, May 5, 2006, July 5, 2006, July 24, 2006, November 20, 2006, December 13, 2006, and January 3, 2007. (0083-0084, 0076-0079, 0129-0130, 0259-0260, 0302-0303, 0353-0356, 0364-0365, 0375-0376, 0380-0413) Plaintiff was not deprived of any information needed to contest Aetna's rationales at the administrative level.

## C. Plaintiff's Physicians' Records Support Terminating Benefits

Plaintiff's treating physicians' contradictory findings support Aetna's determination that Plaintiff was not disabled from her own occupation. On March 3, 2005, Dr. Gehret stated, "Plaintiff's left L5 radiculopathy improved from surgery" and that her EMG/NCV studies showed she made "an excellent recovery and is normal at this time." On March 10, 2006, Dr. Dennis stated Plaintiff's MRI from January 13, 2006, showed "degenerative disk disease at C4-5 and C5-6, nothing of major consequence." (0244) Dr. Dennis repeatedly reported that "there was no medical contraindication for Plaintiff to participate in a vocational rehabilitation program." (0046-0047, 0062-0063, 0067-0068, 0101-0103, 0198-0200, 0414-0415) On April 3, 2006, Ms. Gibille stated Plaintiff was "previously very active, and has resumed much of her normal routine, along with exercising as she had in the past." (0537-0538) Plaintiff's own physicians discuss objective evidence, such as MRIs, in a manner that is inconsistent with her claims of disabling pain. These reports logically informed Aetna's decision to terminate Plaintiff's LTD benefits.

## D. The Video Surveillance Contradicts Plaintiff's Claims

First Advantage conducted video surveillance of Plaintiff on May 8th, 9th, 15th, and 16th of 2006. (1252, 0326-0331, 0317-0325) The video surveillance shows Plaintiff voluntarily bending fully at the waist and for surprising amounts of time given her alleged back pain. She is observed twisting her neck while bent over, getting in and out of her Mercedes, which is low to the ground, without any pain behaviors, and waking fluidly and upright. Plaintiff's demonstrated range of motion is inconsistent with her claims of severe, neck, back, and leg pain. Aetna reasonably considered this objective evidence as part of its review.

-16-

### E. Plaintiff's Occupation was Sedentary

Plaintiff's LTD Plan required that she be disabled from her "own occupation" in the general economy, not her specific position at Boeing. (0083-0084) Her occupation corresponded most closely to the U.S. Department of Labor's job category of "Manufacturing Engineer, Chief/Director, Research and Development" which is classified as sedentary in the general economy. (0927-0929) Furthermore, Plaintiff performed her job at Boeing in a sedentary capacity prior to her instant leave of absence. On September 14, 2004, Boeing's Superintendent stated Plaintiff, "…was not doing any traveling prior to LOA, and would continue with no travel, no lifting, or any activity that would aggravate her condition…" (0727-0728) In 2006, Boeing confirmed, "any and all accommodations" would be available to Plaintiff upon a return to work. (0129)

## V. CONCLUSION

Significant evidence contradicts Plaintiff's complaints of pain, including her own treating physicians' records, MRIs and neurological exams, the video surveillance, and the professional opinions of two board-certified physicians who reviewed Plaintiff's claims and concluded she was not disabled from her own occupation. Aetna's decision to terminate Plaintiff's LTD benefits is supported by the totality of the evidence contained in the administrative record and deserves this Court's full deference on review.

Dated: February 12, 2007    GORDON & REES LLP

Ronald K. Alberts
Shannon L. Victor
Attorneys for Defendants AETNA LIFE INSURANCE COMPANY AND THE BOEING COMPANY EMPLOYEE HEALTH AND WELFARE BENEFIT PLAN