1  FRANK N. DARRAS #128904
   Email: fdarras@sbd-law.com
2  LISSA A. MARTINEZ #206994
3  Email: lmartinez@sbd-law.com
4  SHERNOFF BIDART & DARRAS, LLP
   3257 East Guasti Road, Suite 300
5  Ontario, CA  91761
6  Telephone:  (909) 390-3770
7  Facsimile:   (909) 974-2121

8  Attorneys for Plaintiff
9  CARI GARRISON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARI GARRISON,<br><br>Plaintiff,<br><br>vs.<br><br>AETNA LIFE INSURANCE COMPANY; THE BOEING COMPANY EMPLOYEE HEALTH AND WELFARE BENEFIT PLAN,<br><br>Defendants. | Case No.: CV07-3094 JFW(Ex)<br><br>**PLAINTIFF'S RESPONSIVE TRIAL BRIEF**<br><br>Judge:  Hon. John F. Walter<br>Date:   February 26, 2008<br>Time:   8:30 am<br>Ctrm:   16 |

Plaintiff, Cari Garrison, hereby submits the following Responsive Trial Brief in the above matter.

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. AETNA OPERATED UNDER A HEAVY CONFLICT OF INTEREST, AND AS A RESULT AETNA'S CLAIM DECISION SHOULD BE ACCORDED LITTLE DEFERENCE ............................................................. 1

III. AETNA'S TERMINATION OF MS. GARRISON'S BENEFITS WAS AN ABUSE OF DISCRETION ............................................................................. 3

    A. Aetna Failed To Adequately Investigate Ms. Garrison's Claim ......... 3

    B. Ms. Garrison Was Deprived Of Information Needed To Contest Aetna's Rationales ........................................................................... 5

    C. Ms. Garrison's Physicians' Records Support Disability ..................... 7

    D. The Video Surveillance Does Not Contradict Ms. Garrison's Claim And Carries Little Weight As Evidence Of Ms. Garrison's Ability To Work In Her Occupation ................................................................. 10

    E. Ms. Garrison's Occupation Was "Light" Not "Sedentary" ............... 12

IV. CONCLUSION ............................................................................................... 13

# TABLE OF AUTHORITIES
SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

**Cases**

*Abatie v. Alta Health & Life Ins. Co.*
   458 F.3d 955 (9th Cir. 2006)..................................................................1, 2

*Archuleta v. Reliance Standard Life Ins. Co.*
   504 F. Supp. 2d 876 (C.D. Cal. 2007).....................................................2, 3, 5

*Booten v. Lockheed Medical Benefit Plan*
   110 F.3d 1461 (9th Cir. 1997)..................................................................4

*Canseco v. Construction Laborers Pension Trust for So. Cal.*
   93 F.3d 600 (9th Cir. 1996)......................................................................7

*Finley v. Hartford Life and Accident Ins. Co.*
   2007 WL 4374417 (N.D. Cal. Dec. 14, 2007)........................................4, 11, 12

*Frei v. Hartford Life Ins. Co.*
   2006 WL 563051 (N.D. Cal. March 7, 2006)..........................................13

*King v. Cigna Corp.*
   2007 WL 2288117 (N.D. Cal. Aug. 7, 2007............................................12

*Kunin v. Benefit Trust Life Ins. Co.*
   910 F.2d 534 (9th Cir. 1990)....................................................................4, 5

*Lundquist v. Continental Cas. Co.*
   394 F. Supp. 2d 1230 (C.D. Cal. 2005)...................................................5

*May v. Metropolitan Life Ins. Co.*
   2004 WL 2011460 (N.D. Cal. Sep. 9, 2004)...........................................9

*Mitchell v. Metropolitan Life Ins. Co.*
   523 F. Supp. 2d 1132 (C.D. Cal. 2007)...................................................2, 7

*Mizzell v. The Paul Revere Life Ins. Co.*
   118 F. Supp. 2d 1016 (C.D. Cal. 2000)...................................................13

*Ordway v. Metropolitan Life Ins. Co.*
    2007 WL 2410065 (S.D. Cal. Aug. 21, 2007) ........................................................12

*Saffle v. Sierra Power Pacific Co.*
    85 F.3d 455 (9th Cir. 1996) ........................................................................................7, 13

*Saffon v. Wells Fargo & Co. Long Term Disability Plan*
    511 F.3d 1206 (9th Cir. 2008) ...........................................................................1, 2, 6, 8, 9

*Saltarelli v. Bob Barker Croup Med. Trust et al*
    35 F.3d 382 (9th Cir. 1994) ..............................................................................................7

*Schikore v. BankAmerica Supplemental Ret. Plan*
    269 F.3d 956 (9th Cir. 2001) ............................................................................................4

*Thivierge v. Hartford Life and Acc. Ins. Co.*
    2006 WL 823751 (N.D. Cal. March 28, 2006) ...............................................................12

## I. INTRODUCTION

True to form – and just like it handled Ms. Garrison's claim – Aetna's Opening Trial Brief makes absolutely no mention or reference to any of Ms. Garrison's numerous pain medications. In fact, if one were to believe Aetna's version of the facts, Ms. Garrison NEVER takes any pain medications, Ms. Garrison's physicians do NOT support her disability, the video surveillance shows activities INCONSISTENT with her complaints of pain, and the Plan defines "own occupation" in the general economy and with accommodations. However, as a careful examination of the administrative record reveals, Aetna is wrong on every count. As such, Aetna's denial of Ms. Garrison's claim was an abuse of discretion.

## II. AETNA OPERATED UNDER A HEAVY CONFLICT OF INTEREST, AND AS A RESULT AETNA'S CLAIM DECISION SHOULD BE ACCORDED LITTLE DEFERENCE

Where a plan administrator "both decides who gets benefits and pays for them, ... it has a direct financial incentive to deny claims," and therefore "labors under ... a conflict of interest." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 511 F.3d 1206, 1211 (9th Cir. 2008). Pursuant to *Abatie*, "a reviewing court must always consider the 'inherent conflict that exists when a plan administrator both administers the plan and funds it.'" *Saffon*, 511 F.3d at 1211 (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006) (emphasis added).[1] "When reviewing a discretionary denial of benefits by a plan administrator who is subject to a conflict of interest, [the Court] must determine the extent to which the conflict influenced the administrator's decision and discount to that extent the deference ... accorded[ed] the administrator's decision." *Id.* at 1212.

Here, Aetna labors under a conflict of interest. In reviewing Aetna's decision to deny benefits, the Court must view Aetna's decision with skepticism and determine the extent to which this conflict influenced Aetna's decision.

*Abatie*, 458 F.3d at 965. The Court shall weigh a conflict "more heavily" when presented with evidence of self-dealing, failure to adequately investigate a claim, failure to credit a claimant's reliable evidence, application of inconsistent plan interpretations or the wrong definition of disability, or failure to use a truly independent medical examiner. *Id.* at 968-69 & n.7; *Mitchell v. Metropolitan Life Ins. Co.*, 523 F. Supp. 2d 1132, 1143-44 (C.D. Cal. 2007) ("[T]he Court finds that [insurer's] reasons for denying Mitchell's claim should be reviewed with skepticism [because insurer] applied the wrong definition of disability, ... failed to credit Plaintiff's substantial evidence of serious medical conditions, ... and failed to adequately investigate the claim."); *Archuleta v. Reliance Standard Life Ins. Co.*, 504 F. Supp. 2d 876, 883 (C.D. Cal. 2007) (reviewing denial with elevated skepticism based on insurer's failure to investigate the side-effects of plaintiff's pain medications). Only "after determining the degree of deference (if any) it should accord [Aetna's] decision," shall this Court determine whether Ms. Garrison is entitled to benefits. *Saffon*, 511 F.3d at 1216.

As detailed in Plaintiff's Opening Trial Brief,[2] the Court should accord little deference to Aetna's claim decision due to the heavy evidence that Aetna's decision was affected by its conflict of interest. Evidence presented therein includes: (1) Aetna's failure to adequately investigate (or even consider) Ms. Garrison's claim regarding her reports of pain, fatigue, and side-effects of numerous pain medications; (2) Aetna's misrepresentation of the terms of the Plan, application of the wrong definition of disability, and improper classification of Ms. Garrison's occupation as "sedentary"; (3) Aetna's failure to credit Ms. Garrison's reliable evidence of disability; and (4) Aetna's reliance on suspect medical reviews performed by biased consultants. (*See* Pltfs Trial Brief, pp. 17 – 20.)

---

[1] Unless otherwise noted, all emphasis is added by Plaintiff.
[2] Plaintiff respectfully refers the Court to her Opening Trial Brief (filed on February 12, 2008), which she incorporates herein by reference.

## III. AETNA'S TERMINATION OF MS. GARRISON'S BENEFITS WAS AN ABUSE OF DISCRETION

### A. Aetna Failed To Adequately Investigate Ms. Garrison's Claim

Aetna's assertion that it "more than adequately investigated [Ms. Garrison's] claims" (Defs Trial Brief, 15:14) is without merit. First, as detailed in Plaintiff's Opening Trial Brief, Aetna failed to investigate Ms. Garrison's reports of pain and fatigue, as well as the side-effects of numerous pain medications. (*See* Pltfs Trial Brief, pp. 17-18, 21.) Ms. Garrison, along with her medical providers, informed Aetna on numerous occasions that she suffered from chronic pain and fatigue, as well as the side-effects of her numerous pain medications, and that, in addition to her physical limitations, she was unable to focus for any length of time. (*See* Ex. B, 245-248; Ex. O, 414-415.) Yet, there is absolutely no documentation of any consideration by Aetna (including in-house physicians, disability analysts and reviewing physician consultants) as to Ms. Garrison's reports of pain, fatigue, or the side-effects of medications on her ability to perform her own occupation. Aetna did this "because it understood the results of such an investigation would not have supported its denial." *Archuleta*, 504 F. Supp. 2d at 884. Aetna's failure to investigate these circumstances is especially egregious given the extensive evidence that Ms. Garrison's own occupation requires a high-level of cognitive functioning, mental clarity and focus.

Second, as detailed in Plaintiff's Opening Trial Brief, Aetna's reliance on the opinions of Dr. Cohen and Dr. Bauer was unreasonable as neither consultants considered Ms. Garrison's subjective complaints of pain, fatigue or the side-effects of her numerous pain medications. Moreover, Aetna failed to investigate the contradictions contained within Dr. Cohen's IME report and his Capabilities and Limitations Worksheet. (*See* Pltfs Trial Brief, pp. 12-13, 16, 20, 24-25.) Similarly, Dr. Bauer's report cannot be relied upon because:

[Dr. Bauer] simply concluded that, because [Ms. Garrison's] medical

records revealed no objective abnormalities that would prevent her from [sedentary] full-time work, and because the video depicts [Ms. Garrison] exceeding her self-reported limitations, she is capable of returning to work. [Dr. Bauer, however, failed to] explain[] how [he] could extrapolate from the activity seen on the video, which was limited in duration, to conclude that [Ms. Garrison] could meet the physical demands of full-time work. *Finley v. Hartford Life and Accident Ins. Co.*, 2007 WL 4374417, *9 (N.D. Cal. Dec. 14, 2007).

Third, Aetna failed to obtain medical records from Dr. Robert Johnson, a psychiatrist who placed her on Trazodone.[3] (Ex. Q, 107-110.)[4] Aetna also failed to obtain medical records of the May 5, 2006 epigastric hernia repair (Ex. T, 866); yet determined that Ms. Garrison was no longer disabled as of June 29, 2006.

Fourth, Aetna admits that it "consulted VRCs to investigate Plaintiff's occupation in the general economy" (Defs Trial Brief, 15:12-13); but the Plan does not define own occupation as that performed in the general economy. (Ex. A, 26.)

Under Ninth Circuit law, administrators have a duty to obtain all evidence necessary to make an informed decision on a claim, and a failure to do so is an abuse of discretion. *See Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 960 (9th Cir. 2001) ("abuse of discretion occurs when a plan administrator fails to develop facts necessary to make its determination"); *Booten v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1464 (9th Cir. 1997) (finding Aetna's denial to be "an abuse of discretion" where it failed to "obtain[] relevant information"); *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 537-38 (9th Cir.

---

[3] Aetna incorrectly cites to letters "(0259-0260 and 0302-0309)" for the assertion that it "repeatedly requested Plaintiff's medical records." (Defs Trial Brief, 15:6-7.) These letters are reminders of Ms. Garrison's upcoming orthopedic IME, which incorrectly reference her "diagnosis of major depressive disorder," and mislead Ms. Garrison that Aetna had requested records of her depression.

[4] Exhibits A-U are attached to the Martinez Decl. filed on February 12, 2008 and Exhibits V-X are attached to the Supp. Martinez Decl. filed on February 19, 2008.

PLAINTIFF'S RESPONSIVE TRIAL BRIEF

1990) (an "inadequate investigation" requires reversal, even under review for abuse of discretion); *Archuleta*, 504 F. Supp. 2d at 885-86 (abuse of discretion by failing to investigate plaintiff's complaints regarding the side effects of her pain medications); *Lundquist v. Continental Cas. Co.*, 394 F. Supp. 2d 1230, 1250 (C.D. Cal. 2005) (holding plan administrator's denial wrong based on administrator's failure to properly investigate the claim). Here, Aetna's failure to adequately investigate the claim was an abuse of discretion.

### B. Ms. Garrison Was Deprived Of Information Needed To Contest Aetna's Rationales

Aetna's assertion that it "consistently informed [Ms. Garrison] of the criteria she needed to meet in order to continue to receive benefits," and thus, she "was not deprived of any information needed to contest Aetna's rationales at the administrative level" (Defs Trial Brief, 15:17-18, 15:26-27) is without merit. While Aetna may have communicated with Ms. Garrison, Aetna consistently misrepresented the actual Plan provisions, thereby depriving Ms. Garrison of critical information necessary to contest Aetna's rationales and perfect her claim.

The Plan defines total disability during the first 30 months as: "You are not able, solely because of injury or disease, to perform the material duties of your own occupation; <u>except that if you start work at a reasonable occupation you will no longer be deemed totally disabled</u>." Thereafter, total disability means: "You are not able, solely because of injury or disease, to work at any reasonable occupation." (Ex. A, 26.) Significantly, the Plan does not define "own occupation" or make any reference to "the general economy"; nor does it contain an "objective" evidence requirement. (Ex. A, 1-45.)

Yet, as evidenced in the very same letters that Aetna relies on here,[5] Aetna

---

[5] "These communications are exemplified in Aetna's letters dated June 17, 2004, July 10, 2004, June 30, 2005, April 17, 2006, May 5, 2006, [and] July 5, 2007 ..." (Defs Trial Brief, 15:22-24.)

consistently misrepresented pertinent Plan provisions, including the definitions of "total disability" and "own occupation." For example:

- June 17, 2004 letter: Defining total disability during the first 30 months as the inability to perform "the material duties of your own occupation <u>or other appropriate work Boeing may make available to you.</u>" And "own occupation means <u>your occupation as it exists in the general economy.</u>" (Ex. G, 83.)

- July 10, 2004 letter: "you must provide <u>objective medical evidence</u> ..." (Ex. H, 76.)

- June 30, 2005 letter: Defining total disability during the first 30 months as the inability to perform "the material duties of your own occupation <u>or other appropriate work Boeing makes available.</u>" (Ex. V, 129-130.)

- April 17, 2006 and May 5, 2006 letters: Defining total disability during the first 30 months as the inability to perform "the material duties of our [sic] own occupation <u>or other appropriate work the Company makes available.</u>" (Ex. W, 259-260, 302-303.)

- July 5, 2006 denial letter: Defining total disability during the first 30 months as the inability to perform "the material duties of your own occupation <u>or other appropriate work regardless of whether that job is currently available.</u>" And stating, "we must determine if you are capable of performing <u>your own occupation as it exists in the general economy, not in your specific job.</u>" (Ex. I, 353-354.)

In fact, it was not until the February 9, 2007 appeal denial letter that Aetna finally communicated the correct definition of disability. (Ex. K, 434.) However, "since this was [Aetna's] final denial of [Ms. Garrison's] claim, this information came too late to do [Ms. Garrison] any good." *Saffon*, 511 F.3d at 1214 (information not provided to claimant prior to final denial did not satisfy administrator's obligation under ERISA to undergo a "meaningful dialogue"). Here, Aetna's failure to provide Ms. Garrison with the correct Plan provisions prior to its final denial was an abuse of discretion.

- 6 -
PLAINTIFF'S RESPONSIVE TRIAL BRIEF

## C. Ms. Garrison's Physicians' Records Support Disability

Aetna's assertion that Ms. Garrison's "treating physicians' contradictory findings support Aetna's determination that [she] was not disabled from her own occupation" (Defs Trial Brief, 16:2-3) is without merit. First, by its own admission, Aetna is focusing solely on objective medical evidence – "Plaintiff's own physicians discuss objective evidence, such as MRIs, in a manner that is inconsistent with her claims of disabling pain" (Defs Trial Brief, 16:13-15) – while completely ignoring Ms. Garrison's subjective complaints of pain and fatigue, as well as the side-effects of her numerous pain medications. The Plan, however, does not require objective evidence. It is well-settled in the Ninth Circuit that an administrator may not insist on evidence of disability which is not specified in the Plan. *See Saffle v. Sierra Power Pacific Co.*, 85 F.3d 455, 459-60 (9th Cir. 1996) (A plan administrator may not interpret a plan so as to "impose a new requirement of coverage" as the administrator "lacks discretion to rewrite the plan."); *Canseco v. Construction Laborers Pension Trust for So. Cal.*, 93 F.3d 600, 608-09 (9th Cir. 1996) (same). Courts have continuously held that it is an abuse of discretion to require "objective evidence" to substantiate a disability when such a requirement is not contained on the face of the plan. Most notably, the Central District recently held that the insurer's "application of an objective evidence requirement – written nowhere in its policy ... constitute[s] an abuse of discretion." *Mitchell*, 523 F. Supp. 2d at 1147. As the court explained, an administrator "cannot deny a claim based upon a lack of objective evidence unless that standard was made 'clear, plain and conspicuous [in the Policy] to negate layman [Mitchell's] objectively reasonable expectations of coverage.' *Saltarelli v. Bob Barker Croup Med. Trust et al*, 35 F.3d 382, 387 (9th Cir. 1994)." *Id.* at 1146.

Moreover, it is an abuse of discretion for an administrator to deny a claim based on the failure to provide evidence that does not exist. Aetna's complete disregard of Ms. Garrison's "subjective contentions" of pain is contrary to Ninth

PLAINTIFF'S RESPONSIVE TRIAL BRIEF

Circuit law. In *Saffon*, the court noted that "individual reactions to pain are inherently subjective, and not easily determined by reference to objective measurements." *Saffon*, 511 F.3d at 1216. The court criticized the insurer for appearing to turn down the plaintiff's claim for failure to produce evidence of pain that was unavailable. *Id.* Thus, it was unreasonable for Aetna to dismiss Ms. Garrison's reports of pain, particularly when they were supported by MRIs showing injuries consistent with her symptoms and findings on examination of muscle spasm, tightness and limited range of motion.

Second, contrary to Aetna's slanted version of the facts – there is not one mention in Aetna's 17-page Trial Brief of Ms. Garrison's numerous pain medications – as documented in the AR, Ms. Garrison's physicians' records support her ongoing disability. (*See* Pltfs Trial Brief, pp. 5-10, 15.) For example,

- March 5, 2005: Dr. Gehret documented current complaints of aching pain in hip and thigh; diagnosed iliotibial tendonitis/fasciitis. (Ex. Q, 107-110)

- January 27, 2006: Dr. Dennis documented "significant mechanical pain"; medications - Neurontin, Naprosyn and Valium. (Ex. D, 198; Ex. Q, 197)

- April 7, 2006: Dr. Dennis documented "mechanical symptoms with radiating thigh pain ... also has issues with her cervical spine" and "she will never return to work at her former job with Boeing." (Ex. Q, 256)

- June 9. 2006: Dr. Dennis documented "She still has difficulty sitting. I do not think she will ever be able to return to work or her former activity level. She is taking Neurontin [and] Naprosyn." (Ex. Q, 527)

- January 3, 2007: Dr. Dennis documented that Ms. Garrison has "ongoing radicular complaints, mechanical low back pain, sacroiliac joint pain, ongoing mechanically-induced sciatic pain [and] chronic cervical spine symptoms secondary to degenerative disk disease [and] mechanically-induced pain." She has functional limitations due to pain, cannot sit, stand or walk for any length of time and, as such, she cannot perform her occupation. "I do not feel Ms. Garrison will ever be able to return to her previous line of work." (Ex. Q, 414)

Further, Ms. Garrison's pharmacy records document the following medications were filled/refilled in 2006 (Jan. – Aug.) (Ex. R, 541-569):

| Date | Medication |
|---|---|
| 1/1/06 | **Hydrocodone/APAP** 5 mg/500mg #60 |
| 1/10/06 | **Naprosyn** 500mg #60 |
| 1/17/06 | **Neurontin** 300mg #90; **Diazepam (Valium)** 5 mg #60 |
| 2/13/06 | **Naprosyn** 500mg #60 |
| 2/18/06 | **Neurontin** 300mg #90 |
| 2/26/06 | Trazodone 150 mg #30 |
| 3/19/06 | **Naprosyn** 500mg #60 |
| 3/21/06 | **Diazepam (Valium)** 5 mg #60 |
| 3/24/06 | **Neurontin** 300mg #90 |
| 4/12/06 | **Hydrocodone/APAP** 5 mg/500mg #30; **Lorazepam** 1 mg #20 |
| 4/25/06 | **Naprosyn** 500mg #60; **Neurontin** 300mg #90 |
| 4/27/06 | Trazodone 150 mg #30 |
| 5/19/06 | **Diazepam(Valium)** 5 mg #60 |
| 5/25/06 | **Naprosyn** 500mg #60; **Neurontin** 300mg #90 |
| 6/20/06 | **Neurontin** 300mg #90; Trazodone 150 mg #30 |
| 6/21/06 | **Naprosyn** 500mg #60 |
| 7/7/06 | **Diazepam(Valium)** 5 mg #60 |
| 7/24/06 | **Neurontin** 300mg #90 |
| 7/25/06 | **Naprosyn** 500mg #60 |
| 8/19/06 | **Hydrocodone/APAP** 5 mg/500mg #60 |
| 8/24/06 | **Neurontin** 300mg #90 |
| 9/1/06 | **Diazepam (Valium)** 5 mg #60; **Naprosyn** 500mg #60; Trazodone |
| 9/25/06 | **Neurontin** 300mg #90; **Diazepam** 5 mg #60; **Naprosyn** 500mg #60 |
| 9/28/06 | Naproxen (*same as Naprosyn*) 500mg #60 |

As detailed in Plaintiff's Opening Trial Brief, Aetna's denial was based upon a selective review of the evidence and failed to fully consider Ms. Garrison's claim for disability – which is evidence that Aetna's denial was an abuse of discretion. *Saffon*, 511 F.3d at 1216. *See also May v. Metropolitan Life Ins. Co.*, 2004 WL 2011460, *8 (N.D. Cal. Sep. 9, 2004) (insurer abused its discretion where "the administrative record is replete with evidence that Plaintiff was disabled, including her own reports about the effect of her conditions on her ability

to function, ... and the reports of Plaintiff's colleagues describing how her health affected her ability to work). Here, Aetna's failure to consider all of the evidence was an abuse of discretion.

### D. The Video Surveillance Does Not Contradict Ms. Garrison's Claim And Carries Little Weight As Evidence Of Ms. Garrison's Ability To Work In Her Occupation

The video surveillance does not demonstrate that Ms. Garrison can work full-time in her occupation, nor does it refute or conflict with the medical evidence establishing her physical limitations. Aetna, however, places much reliance on the videotape surveillance. In so doing, Aetna misrepresents to the Court the true facts regarding the nature and extent of the surveillance.

Aetna states that surveillance was conducted on "May 8th, 9th, 15th, and 16th of 2006 [and] shows Plaintiff voluntarily bending fully at the waist and for surprising amounts of time given her alleged back pain." (Defs Trial Brief, 16:19-22.) What Aetna fails to mention is that surveillance of Ms. Garrison was actually conducted for five full days (including May 10th) – for a total of 45 hours and 48 minutes – of which, only 11 minutes and 9 seconds of actual video was obtained. Moreover, Ms. Garrison was only observed bending for a total of 1 minute and 26 seconds during the five days of observation – hardly the "surprising amounts of time" that Aetna represented to the Court.

The following is a breakdown of the actual video surveillance (*see* Ex. M):

- May 8, 2006: Surveillance/total time: 5:54 am -3:00 pm = 9 hrs, 6 min; Video total time: 0 min; Activities observed: None.

- May 9, 2006: Surveillance/total time: 5:45 am -3:00 pm = 9 hrs, 15 min; Video total time: 3 min, 10 sec; Activities observed: Claimant was observed entering and exiting the home, placing mail into a curbside mailbox, bending at the waist while supporting her weight with her left hand on her left knee (held bend for 40 seconds and later for 7 seconds), turning her head while looking around and talking to the cat. Claimant moved gingerly with slow, guarded movements, especially when walking

PLAINTIFF'S RESPONSIVE TRIAL BRIEF

down the steps.

- May 10, 2006: Surveillance/total time: 5:54 am -3:00 pm = 9 hrs, 6 min; Video total time: 0 min; Activities observed: None.

- May 15, 2006: Surveillance/total time: 5:46 am -3:00 pm = 9 hrs, 14 min; Video total time: 1 min, 9 sec; Activities observed: Claimant was observed entering and exiting the home, carrying a small object in the palm of her left hand, bending at the waist to pet the cat while supporting her weight with her right elbow on her right thigh (held bend for 12 seconds and then again for 5 seconds in garage), turning her head while looking around. Claimant moved gingerly with slow, guarded movements.

- May 16, 2006 (IME): Surveillance/total time: 5:53 am -3:00 pm = 9 hrs, 7 min; Video total time: 6 min, 50 sec; Activities observed: Claimant was observed bending at the waist while leaning into the vehicle and bending (leaning into the vehicle and bending at the waist for 9 seconds and then again for 13 seconds) and walking. Claimant was observed driving the Mercedes to the IME appointment.

Although Aetna's agents surveilled Ms. Garrison for a <u>total of 45 hours and 48 minutes</u>, they only captured <u>11 minutes and 9 seconds of activity</u>, and of that only <u>1 minute and 26 seconds actually showed Ms. Garrison bending</u> at the waist, whereby she supported her weight with her arm on her thigh, and moved gingerly with slow, guarded movements, especially when walking down the steps.

So, after five days of surveillance, Aetna got Ms. Garrison on videotape for a mere 11 minutes while on prescribed medications for her pain (recall that the May 16, 2006 IME lists "Current medications: Neurontin, Naproysyn, Valium, Vicodin"). Not a very compelling reason to deny benefits. And the courts agree.

The federal courts in this Circuit have repeatedly taken note of the limited utility of videotaped surveillance in evaluating disability because it typically does not and cannot demonstrate a claimant's ability to perform a full-time job on a reasonably continuous and sustained period of time. *See Finley v. Hartford Life*

PLAINTIFF'S RESPONSIVE TRIAL BRIEF

*and Accident Ins. Co.*, 2007 WL 4374417, *9 (N.D. Cal. Dec. 14, 2007) (video surveillance insufficient to show "plaintiff is capable of enduring the physical demands of full-time work, even in a sedentary position, [as] the video depicts only a few scattered bursts of activity"); *King v. Cigna Corp.*, 2007 WL 2288117, *11 (N.D. Cal. Aug. 7, 2007) (video does "not establish that [plaintiff] is able to work an eight-hour-a-day job, especially one that requires her to spend most of her day sitting ... flares of pain are quite detrimental to one's focus and ability to perform cognitive tasks"); *Ordway v. Metropolitan Life Ins. Co.*, 2007 WL 2410065, *8 (S.D. Cal. Aug. 21, 2007) ("Defendant's 'snapshot' approach to determining plaintiff's activity level is far from substantial evidence with which to determine benefits."); *Thivierge v. Hartford Life and Acc. Ins. Co.*, 2006 WL 823751, *11 (N.D. Cal. March 28, 2006) (video surveillance of plaintiff walking, driving and doing errands for a couple of hours on five out of six days "does not mean that Plaintiff is able to work an eight-hour a day job").

Here, Aetna's reliance on the surveillance video to show that Ms. Garrison is not disabled is an abuse of discretion – eleven minutes of sporadic walking, bending, and driving observed over a five day period do not show that she can perform her occupation for a sustained period of time. Ms. Garrison urges the Court to view the video for itself in order to illuminate the arbitrary and capricious nature of Aetna's decision. (Ex. X, 1252.)

E. **Ms. Garrison's Occupation Was "Light" Not "Sedentary"**

Aetna's assertion that Ms. Garrison's occupation was "sedentary" (Defs Trial Brief, 17:1-12) is without merit. First, as detailed in Plaintiff's Opening Trial Brief and discussed above, Ms. Garrison is disabled if she is unable to perform the "material duties of [her] own occupation" – period. Contrary to Aetna's assertion, the Plan does not define or make any reference to "own occupation" as performed

PLAINTIFF'S RESPONSIVE TRIAL BRIEF

SHERNOFF BIDART DARRAS
LAWYERS FOR INSURANCE POLICYHOLDERS
600 S INDIAN HILL BLVD CLAREMONT CA 91711 TEL 909 621 4935

in the general economy.[6] Aetna abused its discretion by looking to the general economy, rather than how Ms. Garrison's specific position at Boeing was performed – which even Aetna admitted was "light." (Ex. T, 698, 700, 719-720, 905, 915.) *See Saffle*, 85 F.3d at 459-60 (A plan administrator may not interpret a plan so as to "impose a new requirement of coverage" as the administrator "lacks discretion to rewrite the plan."); *Mizzell v. The Paul Revere Life Ins. Co.*, 118 F. Supp. 2d 1016, 1021-22 (C.D. Cal. 2000) (Interpreting "own occupation" policy and holding that '[i]n utilizing the Department of Labor's definition of plaintiff's occupation ... to determine that plaintiff's position was sedentary, rather than examining plaintiff's actual job duties, Paul Revere acted contrary to the plain language of the plan and abused its discretion.").

Second, as detailed in Plaintiff's Opening Trial Brief, Aetna abused its discretion by considering "accommodations" to Ms. Garrison's occupational duties. *See Saffle*, 85 F.3d at 459 (consideration of accommodations where the Plan does not allow it is an abuse of secretion); *Frei v. Hartford Life Ins. Co.*, 2006 WL 563051, *8 (N.D. Cal. March 7, 2006) (finding abuse of discretion where insurer applied a definition of total disability that conflicted with the plan's language when it denied benefits based on plaintiff's ability to work with accommodations").

## IV. CONCLUSION

For the foregoing reasons, Ms. Garrison requests that the Court enter judgment in her favor, as Aetna's denial was an abuse of discretion.

DATED: February 19, 2008　　　　　　　　SHERNOFF BIDART & DARRAS, LLP

　　　　　　　　　　　　　　　　　　　　　　　　_[signature]_
　　　　　　　　　　　　　　　　　　　　　　　　FRANK N. DARRAS
　　　　　　　　　　　　　　　　　　　　　　　　LISSA A. MARTINEZ
　　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff CARI GARRISON

---

[6] Aetna only cites to June 17, 2004 letter (0083-0084). (Defs Trial Brief, 17:2-4.)

Garrison v. Aetna
Case No: CV07-3094 JFW(Ex)

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO**

I am employed in the county of San Bernardino, State of California. I am over the age of 18 and not a party to the within action; my business address is: 3257 East Guasti Road, Suite 300, Ontario, California 91761.

On **February 19, 2008**, I served the foregoing document described as:

### PLAINTIFF'S RESPONSIVE TRIAL BRIEF

on all interested parties in this action by placing [ ] the original [ x ] a true copy thereof enclosed in sealed envelopes addressed as follows:

Ronald K. Alberts, Esq.
Shannon L. Victor, Esq.
GORDON & REES
633 W. 5th Street, Ste. 4900
Los Angeles, CA 90071
Phone: (213) 576-5000
Fax: (213) 680-4470

Attorneys for Defendants: AETNA LIFE INSURANCE COMPANY and THE BOEING COMPANY EMPLOYEE HEALTH AND WELFARE BENEFIT PLAN

[ x ] BY MAIL
    I caused such envelope to be deposited in the mail at Ontario, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date deposit for mailing in affidavit.

[ ] BY PERSONAL SERVICE
    I caused to be delivered by hand to the above-listed addressees or to the addressees on the list attached hereto. A proof of service executed by the delivery person will be mailed under separate cover.

[ ] BY OVERNIGHT MAIL/COURIER
    To expedite the delivery of the above-named document, said document was sent via overnight courier for next day delivery to the above-listed party.

[ ] BY FACSIMILE ("FAX")
    In addition to the manner of proof of service indicated above, a copy was sent by FAX to the above-listed party.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of California that the above is true and correct.

Executed on **February 19, 2008**, at Ontario, California.

_____
Catherine Carvalho