RONALD K. ALBERTS (SBN: 100017)
SHANNON L. VICTOR (SBN: 221889)
GORDON & REES LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470
ralberts@gordonrees.com
svictor@gordonrees.com

Attorneys for Defendants
AETNA LIFE INSURANCE COMPANY; THE BOEING COMPANY EMPLOYEE HEALTH BENEFIT PLAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARI GARRISON<br><br>Plaintiff,<br><br>vs.<br><br>AETNA LIFE INSURANCE COMPANY; THE BOEING COMPANY EMPLOYEE HEALTH AND WELFARE BENEFIT PLAN<br><br>Defendants. | CASE NO. CV 07-03094 GHK (Ex)<br><br>DEFENDANTS, AETNA LIFE INSURANCE COMPANY AND THE BOEING COMPANY EMPLOYEE HEALTH AND WELFARE BENEFIT PLAN'S REPLY TO PLAINTIFF'S OPENING TRIAL BRIEF |

Defendants, Aetna Life Insurance Company ("Aetna") and the Boeing Company Employee Health and Welfare Benefit Plan (the "Plan") hereby Reply to Plaintiff's Opening Trial Brief.

-1-

# TABLE OF CONTENTS

I. AETNA CONSIDERED PLAINTIFF'S SUBJECTIVE COMPLAINTS OF PAIN AND HER FUNCTIONALITY WHILE USING HER PRESCRIBED MEDICATION AND DID NOT ABUSE ITS DISCRETION ................................................. 3

    A. PLAINTIFF'S SUBJECTIVE COMPLAINTS WERE CONSIDERED IN LIGHT OF THE OBJECTIVE EVIDENCE WHICH CONTRADICTED THEM ................................................. 4

    B. THE LEGAL AUTHORITY CITED BY PLAINTIFF IS UNPERSUASIVE ................................................. 7

II. AETNA PROPERLY CONSIDERED PLAINTIFF'S OCCUPATION AS IT EXISTED WHEN SHE CLAIMED DISABILITY ................................................. 8

III. PLAINTIFF'S ASSERTION THAT AETNA "MISREPRESENTED" THE TERMS OF THE LTD POLICY IS FALSE ................................................. 12

IV. PLAINTIFF'S CLAIM THAT AETNA'S ABUSED ITS DISCRETION BY CLASSIFYING HER OCCUPATION AS "SEDENTARY" RATHER THAN "LIGHT" IS UNPERSUASIVE. ................................................. 13

V. CONCLUSION ................................................. 14

# TABLE OF AUTHORITIES

Cases:

*Archuleta v. Reliance Standard Life Ins. Co.,*
   504 F. Supp. 2d 876, (C.D. Cal 2007) ................................................. 7

*Peterson v. Continental Casualty Co.,*
   77 F. Supp 2d 240 (S.D.N.Y. 1999) ................................................. 8, 9, 10

*Ross v. Indiana State Teachers Assoc. Ins. Trust,*
   159 F.3d 1001 (7th Cir. 1998) ................................................. 10, 11

*Saffle v. Sierra Pacific Power Co.,* 85 F.3d 455 (9th Cir. 1996) ................. 8, 9, 10, 11

*Saffon v. Wells Fargo Long Term Disability Plan,*
   2008 WL 80704 ................................................. 7, 8

*Martin v. Continental Casualty Co.,*
   96 F.Supp 2d 983, 992, (N.D. Cal. 2000) ................................................. 13

Plaintiff argues Aetna acted under a conflict of interest and abused its discretion when it denied her claim for long term disability ("LTD") benefits. However, as shown in this Brief, Plaintiff's arguments are contradicted by the evidence and are wholly unpersuasive.[1] Plaintiff's claim that Aetna ignored her subjective complaints and improperly focused on "objective" evidence is also unpersuasive and unsupported by the facts and legal authority cited in Plaintiff's Opening Trial Brief. Plaintiff incorrectly claims Aetna considered her work accommodations when evaluating whether she was capable of performing the material duties of her own occupation. In fact, Aetna simply looked to the position Plaintiff left when she went out on disability, not the position she once held. Based on this incorrect assertion, Plaintiff erroneously argues that Aetna misrepresented Plan terms and erroneously concluded Plaintiff's occupation was "sedentary." Further Plaintiff's assertion that Aetna relied on biased medical opinions is unpersuasive and contradicted by the evidence. For the reasons set forth herein, Plaintiff's arguments fail.

## I. AETNA CONSIDERED PLAINTIFF'S SUBJECTIVE COMPLAINTS OF PAIN AND HER FUNCTIONALITY WHILE USING HER PRESCRIBED MEDICATION AND DID NOT ABUSE ITS DISCRETION

Plaintiff erroneously argues that Aetna ignored her subjective complaints and relied solely on objective evidence. Plaintiff references several cases to support of her position that relying solely on objective evidence is improper.

///

///

---

[1] In Plaintiff's Opening Trial Brief she argues separately that Aetna 1) acted under a conflict of interest, and 2) abused its discretion. However, Plaintiff provides substantially similar arguments and rationales in support of both of these allegations. Accordingly, Defendants address Plaintiff's allegations that Aetna acted under a conflict of interest and abused its discretion simultaneously.

-3-

However, it is well documented in the record and subsequent discovery that Aetna did not ignore Plaintiff's subjective complaints or fail to consider the affects of her medication.

### A. Plaintiff's Subjective Complaints were considered in light of the Objective Evidence which contradicted them

In Dr. Cohen's independent medical exam ("IME") report he states Plaintiff had "some mild muscle spasm of the cervical spine and lumbar spine" and "should be allowed to change position[s] at will to avoid prolonged sitting or standing to avoid exacerbating her low back symptoms." Clearly, Dr. Cohen considered Plaintiff's subjective complaints when he imposed work restrictions to "avoid exacerbating [Plaintiff's] low back symptoms."

Moreover, in Plaintiff's Opening Trial Brief she states Dr. Cohen "documented in his Report current complaints of constant aching sensation across [Plaintiff's] low back and constant shooting pain in her left leg." He also noted the medications Nuerontin, Naprosyn, Valium, and Vicodin.

It must be noted that Dr. Cohen performed his IME of Plaintiff in May of 2006 and issued his report on May 16, 2006. The surveillance videos of taken of Plaintiff, discussed below, were performed on May 9th, 15th, and 16th off 2006. Plaintiff's reported complaints to Dr. Cohen of "constant aching sensations across her low back" etc. are inconsistent with her observed behaviors while under surveillance, even though the surveillance and Plaintiff's IME both occurred at approximately the same time in May of 2006.

In Dr. Bauer's Peer Review Report he states that Plaintiff reportedly "had been unable to focus for any length of time to function at a level necessary to participate in a job that has high stress, long hours, and considerable amount of travel." Dr. Bauer noted that on September 23, 2005, Plaintiff reported physical

///

-4-

therapy was providing relief for neck and lower back pain and had switched from taking Relafen to Naprosyn.

In his deposition testimony, Dr. Bauer unequivocally testified that he considered Plaintiff's subjective complaints when performing his review. See Exhibit A, Deposition of Bauer at 77:18-25, 78:1-25, 79:1-1-3.109:24-25, 110:1-12.

Plaintiff also erroneously alleges Aetna failed to consider the side effects of her medications. However, Plaintiff fails to point to a single medical record that states she suffered a particular side effect from a particular medication. Listing medications does not equate to documentation of suffering from side effects. Dr. Bauer testified that he reviewed Plaintiff's complete file and that, "The physicians' reports do not note side effects. And again, if its not there, it doesn't happen." Bauer depo. at 98:20-25. Dr. Bauer indicated that when his patients report side effects from medications that it will appear in his records because he would change that patient's therapy. Dr. Bauer stated he did not see any notes like that in Plaintiff's records. Bauer depo. at 98:20-25; 99:1-2. Both Drs. Bauer and Cohen considered Plaintiff's subjective complaints and Aetna's reliance on these physicians' findings was completely appropriate.

As regards objective evidence, there was plenty. Plaintiff's file contained MRIs, x-rays, and test results regarding her range of motion, and showing she was neurologically intact. Furthermore, there is objective evidence in the instant matter that sheds light on Plaintiff's subjective complaints of pain. The surveillance videos taken of Plaintiff on multiple days in May of 2006, show Plaintiff needlessly bending fully at the waist while twisting her neck, entering a low car fluidly and exhibiting a wide range of motion without any pain behaviors. Her observed and voluntary range of motion, (absent any pain behaviors), is impressive

///

///

-5-

and undermines her complaints of severe pain. None of the cases relied upon by Plaintiff involved video surveillance that contradicted a plaintiff's complaints of subjective pain.

Dr. Bauer testified that he spent a significant amount of time watching the surveillance videos of Plaintiff. Bauer Depo. at 61:2-22. A physical therapy note indicates Plaintiff reported it was "somewhat difficult" for her to get in and out of a car. (AET 140) Dr. Bauer testified that her claim was inconsistent with his observations of Plaintiff on the video-taped surveillance. Bauer Depo. at **104:15-25, 105:1**. He stated:

> She got into that car very easily and that's a low car. She had to bend over 90 degrees at the waist and 90 degrees at the knee is my recollection...And she did it quickly. She didn't hesitate. I mean when my back hurts and I try and get in my truck and its elevated and seat's at 90 degrees'-- I look like an old man getting in so—and –I've seen this with my patients. I've had my patients tell me this. So when I saw her on the video, her own actions controvert something she told somebody else. He didn't observe it. I did. She told the physical therapist it was "somewhat difficult for her to get in and out of the car." Bauer depo. at 104:15-25, 105:1.

Dr. Bauer testified that "Ms. Garrison told her doctor she couldn't sit, she couldn't bend." Bauer depo. at 112:1-3. However, Dr. Bauer stated, "I watched her do it… I watched…the claimant getting into a low-slung sports car with flexion at her hip and at her knee greater than she exhibited for any of her doctors." Dr. Bauer depo. 112:1-11.

Aetna considered the totality of the information provided, which included both subjective and objective evidence, and found that on the whole, the evidence in the record failed to support a finding that Plaintiff met her plan's definition of disability. It would be inequitable and illogical to find that Aetna somehow abused its discretion for considering this objective evidence, just because it happens to discredit Plaintiff's complaints of pain. Furthermore, the video surveillance undermines Plaintiff's claim that she constantly needs to take pain medication that
///

-6-

would affect her ability to focus. Either she took the medicine and was able to focus and drive a car, or she didn't medicate herself and didn't show any signs of pain.

**B.     The Legal Authority Cited by Plaintiff is Unpersuasive**

Plaintiff relies on *Archuleta v. Reliance Standard Life Ins. Co.,* 504 F. Supp. 2d 876, (C.D. Cal 2007), in support of her argument that Aetna abused its discretion by failing to adequately investigate the side effects of her pain medication. In *Archuleta,* the plaintiff appealed her claim for LTD benefits, and alleged that her condition was deteriorating and that her medications affected her ability to concentrate. On appeal she submitted a report from her treating physician in support of her claims, which was the most recent and most detailed report in her record. However, the insurer failed to provide this report to its reviewing physician, relied heavily on its reviewing physician's findings, and then denied her claim. The insurer failed to indicate that it gave any consideration whatsoever to the plaintiff's most recent medical report and complaints on appeal. In addition the insurer misrepresented the findings of its reviewing physician. In contrast to *Archuleta,* Aetna provided Plaintiff's complete file to its reviewing physician, Dr. Bauer, prior to denying her appeal on February 9, 2007.

Plaintiff erroneously relies on *Saffon v. Wells Fargo Long Term Disability Plan*, 2008 WL 80704, to argue that Aetna abused its discretion by allegedly requiring her to provide objective evidence of pain that is "unavailable." In *Saffon*, when the claim administrator-insurer denied the plaintiff's appeal, it advised the plaintiff *for the first time*, that it required "clinical evidence that would substantiate symptoms" and that it had not been provided with a functional capacity evaluation ("FCE") "that would objectively measure" the plaintiff's functional ability. The Court in *Saffon* found the insurer had raised a new rationale for denying benefits i.e., a lack of objective medical evidence, at the last minute, thereby depriving the

-7-

plaintiff from responding to it at the administrative level. The Court found this particularly offensive.

Unlike in *Saffon*, Aetna did not deny Plaintiff's appeal based on a finding that her file lacked the results of a FCE or other objective evidence. Nor did Aetna spring any new grounds for denial upon Plaintiff. There was a substantial and meaningful dialogue between Aetna and Plaintiff.

Aetna and its reviewing physicians referenced and considered Plaintiff's subjective complaints but found them contradicted and outweighed by the totality of the evidence in the record. This does not mean Plaintiff's complaints were ignored.

## II. AETNA PROPERLY CONSIDERED PLAINTIFF'S OCCUPATION AS IT EXISTED WHEN SHE CLAIMED DISABILITY

Plaintiff incorrectly claims Aetna abused its discretion by considering Plaintiff's "work accommodations" when evaluating whether she was able to perform the "material duties of her own occupation." Plaintiff relies on *Saffle v. Sierra Pacific Power Co.*, 85 F.3d 455 (9th Cir. 1996) and *Peterson v. Continental Casualty Co.* 77 F. Supp 2d 240 (S.D.N.Y. 1999) in support of this argument but these cases are significantly distinct from the instant matter. More recent legal authority, that is more on point, supports Aetna's evaluation of plaintiff's occupation and is discussed further below.

The *Saffle* opinion indicates the plaintiff in that case had never actually received work place accommodations prior to her disability. The plaintiff was a customer services clerk in a credit department prior to her disability. She had previously had foot surgery and began receiving "occupational disability" due to foot pain and neck and arm pain resulting from a car accident. The plaintiff's employer, Sierra Pacific Power Co., referred her to a physician for an IME. Sierra advised the physician that plaintiff's "regular job" was "mostly sedentary," and

-8-

that "We also have/had work available for which she is qualified that would have enabled her to work with her feet elevated." The physician found the plaintiff had not been disabled, "assuming that she can remain seated..." The plaintiff's LTD benefits were terminated because the medical opinion indicated she could perform a substantial portion of her "regular job with the accommodations that could have been made." *Saffle v. Sierra,* 85 F.3d 455, 457. The *Saffle* Court held that the claim administrator had erroneously factored "accommodation into the criteria for total disability for purposes of occupational disability benefits." *Id.* at 460.

In stark contrast to the *Saffle* matter, Plaintiff Garrison was performing her occupation at Boeing as previously modified by Boeing and it is that occupation she could resume, not the one she insisted required extensive travel, as admitted in her autobiography attached to her appeal and the statements of her former supervisor at Boeing. (AET 0728-0729)

Plaintiff also cites *Peterson v. Continental* 77 F. Supp 2d 240 (S.D.N.Y. 1999) in support of her contention that Aetna improperly considered her work accommodations when evaluating whether she was able to perform the material duties of her own occupation. This case is not binding or even persuasive authority as it is a district court opinion from New York. Furthermore, this case was overruled on another point of law by the Second Circuit Court of Appeals, in *Peterson v. Continental Casualty Company*, 282 F. 3d 112 (2nd Cir. 2002). The Court of Appeals stated the plaintiff had been a venue production manager for CBS Broadcasting, Inc. ("CBS"). Due to his suffering from carpal tunnel syndrome and a back injury, he was "unable to work as a venue production manager" and was "temporarily reassigned to another position requiring no physical activity." *Id* at 114. About eight months later the plaintiff applied for short and long term disability benefits and his claims were denied. *Id.* at 115. The Court found that the claim administrator "improperly defined Peterson's regular occupation as the position created by CBS to accommodate his disability. *Id.* The Court determined

-9-

that Peterson's regular occupation should have been defined as venue production manager- the position in which he served prior to the onset of his disability." *Id.* The claim administrator "evaluated" the plaintiff's claim "against the wrong occupation." *Id.* at 116. The District Court had remanded the claim, ordering the claim administrator to evaluate the plaintiff's medical condition against the duties of his regular occupation rather than his temporary accommodation. *Id.* at 116.

The facts of *Peterson* are nothing like the facts in the instant matter. In *Peterson*, the plaintiff was not performing his occupation as venue production manager with work accommodations. Rather, he was transferred to an entirely different job or position with his CBS, and considering his temporary position as his position for evaluating his claim to benefits was improper.

In the instant matter Plaintiff was performing the material duties of her own occupation as the Director of Supplier Management for the Future Combat Systems Program up until the day of her surgery on January 29, 2004. Plaintiff states in her autobiography and admits in her Opening Trial Brief that she was working "seven days a week for months, generally 12-16 hour days" and that her managers "tried to accommodate her as much as possible by holding meetings in her office, allowing her to change positions frequently, and traveling for her whenever possible."

Plaintiff's claim is most similar to the facts in *Ross v. Indiana State Teachers Assoc. Ins. Trust,* 159 F.3d 1001 (7th Cir. 1998), where the Court held the trust administrators of a long term disability plan did not abuse their discretion by considering accommodations the plaintiff's employer agreed to provide to allow the plaintiff to return to work when determining whether he continued to be totally disabled, even though the plan defined "totally disabled as the inability to perform substantial duties of employment, with no mention of reasonable accommodation."

The plaintiff in *Ross* cited to *Saffle*, and argued that the claim administrators were effectively "rewriting the plan" and adding a requirement that was not

-10-

expressly stated in the plan's definition of disability. *Id* at 1010. However, the 7th Court of Appeals found the "Board acted well within its discretion when it interpreted the plan to allow it to consider the accommodations to which [the employer] agreed." *Id* at 1011. The Court stated:

> We think it is worth noting that the Board considered the accommodations that ISTA [the employer] actually agreed to make. The Board did not simply determine that, as a theoretical matter, there was some possible accommodations or other work available which might accommodate Mr. Ross. The Board's judgment was not based on hypothetical grounds but rooted explicitly in the precise accommodations agreed to by ISTA. In this context, we do not think the Board of Trustees effectively modified or rewrote the terms of the plan; instead, it adopted a rational interpretation of the broad language of the plan. *Id*.

The Court of Appeals in further stated:

> *Saffle* does not suggest that it is inappropriate to consider accommodations actually offered to an employee to determine whether he is able to perform the substantial duties of his regular job. The problem in *Saffle* with the accommodations that were considered was that they were essentially outside of the realm of *Saffle's* regular job and therefore were at odds with the policy language at issue. Moreover, the accommodations in that case do not appear to have been offered to *Saffle*. *Id* at 1012.

The Court of Appeals noted that "generally, ambiguities in the insurance policy are construed in favor of an insured, in the ERISA context in which a plan administrator has been empowered to interpret the terms of the plan, this rule does not obtain." *Id* at 1011.

In the instant matter, not only was Plaintiff just offered work accommodations, *she was actually performing her own occupation* at Boeing with accommodations prior to the date of her disability. Furthermore, Aetna confirmed in 2006 that Boeing would provide Plaintiff with any accommodations necessary to facilitate her return to work. For the reasons set forth above, Aetna's consideration of Plaintiff's work accommodations was completely appropriate. Plaintiff's

-11-

assertion that Aetna abused its discretion by taking her accommodations into account must fail.

In addition, Plaintiff worked on multiple projects during the course of her employment at Boeing with different occupational requirements. Per Plaintiff's own admission, her work on the Future Combat Systems was coming to a close at the end of 2003. Nothing in the record indicates Plaintiff's next project would require the same demands.

### III. PLAINTIFF'S ASSERTION THAT AETNA "MISREPRESENTED" THE TERMS OF THE LTD POLICY IS FALSE

Plaintiff alleges Aetna "misrepresented" the terms of the LTD Plan in its letter dated June 17, 2004, because Aetna defined disability as the inability to perform "the material and substantial duties of your own occupation or ***other appropriate work Boeing may make available to you***" (emphasis supplied). Aetna's statement in this letter is correctly based on the definition of "totally disabled," contained in the "Disability, Life, and Accident Plans" document ("Plan Summary"). The Plan Summary states, "During the first 30 months of disability, your disability prevents you from working or illness prevents you from performing the material duties of your own occupation ***or other appropriate work the Company makes available***" (emphasis supplied). Plaintiff asserts Aetna has "misrepresented" Plan terms because she prefers the definition of disability set forth under the master plan document, which is basically the same as the definition in the Plan Summary, but it omits the language *"or other appropriate work the Company makes available."*

Plaintiff states in her Opening Trial Brief that she "anticipates" Aetna will rely on the Plan Summary's definition of disability "in order to argue that as Boeing said they would accommodate Ms. Garrison, she is not [disabled] from her

-12-

own occupation as she is able to perform other appropriate work Boeing makes available."

Plaintiff's concern is misplaced and irrelevant. As set forth in the section above, Aetna's consideration of work place accommodations which preceded her disability claim and did not require her to change her occupation is absolutely appropriate, whether scrutinized under the definition of disability set forth in the master plan document or the Plan Summary.

Plaintiff also argues that Aetna erroneously misrepresented Plan terms in its letter dated June 17, 2004, because it advised that a finding of disability required that she be disabled from her "occupation in the general economy" as opposed to her specific job at Boeing. Plaintiff states the term "own occupation" is not defined in the Plan, but provides no authority for her position that Aetna's interpretation of this term is allegedly an abuse of discretion.

Aetna has discretionary authority to interpret Plan terms. Claim administrators of ERISA plans are not required to obtain all definitions from the plan document; rather they are required to interpret terms in accordance with the Plan. *Martin v. Continental Casualty Co.*, 96 F.Supp 2d 983, 992, (N.D. Cal. 2000). Aetna's treatment of the term "own occupation" as meaning "own occupation in the general economy" is also reasonable because "occupation" is more general term than "job," which connotes duties for a specific employer.

IV. **PLAINTIFF'S CLAIM THAT AETNA'S ABUSED ITS DISCRETION BY CLASSIFYING HER OCCUPATION AS "SEDENTARY" RATHER THAN "LIGHT" IS UNPERSUASIVE.**

Plaintiff alleges Aetna "initially classified Ms. Garrison's occupation as light, but then later contended that her occupation was sedentary based on an improper consideration of work place accommodations." As discussed above, Aetna's consideration of Plaintiff's work accommodations was entirely proper.

-13-

Accordingly, this argument is without merit. Aetna's reasoning for concluding her occupation was sedentary is set forth in Defendants Opening Trial Brief.

## V. CONCLUSION

For the reasons set forth hereinabove, Plaintiff's arguments are unavailing and Aetna's benefits decision should be afforded this Court's full deference. Furthermore, the facts and legal arguments discussed above support a finding that Plaintiff was not disabled from her own occupation, regardless of the applicable standard of review.

Dated: February 19, 2008

GORDON & REES LLP

By: _____
Ronald K. Alberts
Shannon L. Victor
Attorneys for Defendants
Aetna Life Insurance Company;
The Boeing Company Employee
Health Benefit Plan

AETNA/1045684/5427662v.1